IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GERARD McAFEE**, | ) |
| Plaintiff, | ) Civil No.: 3:14-cv-410 VAB |
| v. | ) |
| **SYED J. NAQVI, M.D.**, Individually, | ) |
| **OMPRAKASH PILLAI, M.D.**, Individually, "**NURSE ROB**," Individually, | ) **JURY TRIAL DEMANDED** |
| **JOHN/JANE DOES 1-10**, Individually, | ) |
| Defendants. | ) November 4, 2015 |

_____

### FIRST AMENDED COMPLAINT
_____

#### I.    PRELIMINARY STATEMENT

1. This is an action for damages brought pursuant to 42 U.S.C. § 1983 for failure to give reasonable and necessary medical treatment to an inmate incarcerated in the State of Connecticut under the care and custody of the Department of Corrections as required by the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments to the United States Constitution.

#### II.    JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(1) because the claims arose in the district.

#### III.    THE PARTIES

4. Plaintiff Gerard McAfee III ("McAfee"), is a citizen and resident of the State of Connecticut. He was formerly an inmate at MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MacDougall-Walker").

5. At all times relevant herein Defendant Omprakash Pillai, M.D. was a medical doctor licensed in the State of Connecticut and employed by the State of Connecticut to provide medical services to inmates at MacDougall-Walker. He is sued in his individual capacity.

6. At all times relevant herein Defendant Syed J. Naqvi, M.D was a medical doctor licensed in the State of Connecticut who contracted with the State of Connecticut to provide medical care to inmates at McDougall-Walker. He is sued in his individual capacity.

7. At all times relevant herein Defendant "Nurse Rob" (full and/or real name unknown) was a nurse licensed in the State of Connecticut and employed by the State of Connecticut to provide medical services to inmates at MacDougall-Walker. He is sued in his individual capacity.

8. At all times relevant herein Defendants John/Jane Does 1-10 were employed and/or contracted by the State of Connecticut to supervise and/or provide medical services to inmates at MacDougall-Walker and/or to supervise and/or facilitate inmate transportation for medical services to be conducted at places other than MacDougall-Walker. They are sued in their individual capacities.

### IV. ALLEGATIONS OF FACT

9. In or about October 2011 McAfee pled guilty to one count of operating a motor vehicle under the influence of alcohol in violation of Connecticut General Statutes

section 14–227 and one count of carrying a pistol without a permit in violation of Connecticut General Statutes section 29–35(a).

10. On or about October 21, 2011 McAfee was sentenced to five years imprisonment, execution suspended after two years, with three years probation for the aforementioned violation of carrying a pistol without a permit. He was further sentenced to six months imprisonment, execution suspended after two days, and eighteen months probation for the violation of operating a motor vehicle under the influence of alcohol.

11. Conviction for carrying a pistol without a permit carries a maximum penalty of five years incarceration, one year of which cannot be suspended or reduced.

12. On October 21, 2011 McAfee was incarcerated at MacDougall-Walker.

13. All events relevant hereto occurred between March and September, 2012.

14. On or about March 29 McAfee was inside his prison cell when at approximately 11:00 pm he became ill. Shortly thereafter he became nauseated and began intense vomiting of large amounts of liquid. He also experienced excruciating upper abdominal pain. The pain was so intense that he alternated between vomiting and lying on the floor until approximately 4:00 am, at which time he notified the on-duty corrections officers that he needed to go to the prison infirmary for immediate medical treatment.

15. After several complaints to the corrections officer McAfee was authorized to walk to the medical unit for treatment.

16. On March 30 at approximately 5:30 am McAfee was seen at the prison medical unit. He described his pain as a 9 on a scale of 1-10. Medical personnel took blood samples, x-rays, and a urine analysis. Medical personnel contacted Dr. Wright,

3

who prescribed four (4) medications for nausea, vomiting, and constipation. McAfee remained in the medial unit for the next several hours.

17. Later that morning, March 30 at approximately 10:00 am, McAfee was seen by Dr. Pillai. McAfee informed Dr. Pillai that pressing on his abdomen caused pain. Dr. Pillai reviewed the x-rays and concluded that McAfee was suffering from abdominal distension and a "Large Gastric Bubble" (sic). He then prescribed Phenergan to reduce the nausea and vomiting. He also ordered a follow-up abdominal x-ray. At this time lab results were still pending. Dr. Pillai then sent McAfee back to his cell.

18. Four days later, on April 3, McAfee was sent to the medical unit for follow up abdominal x-rays. He was not seen by a physician or informed of the results of the x-rays.

19. Between March 31 and April 6 McAfee continued to suffer from vomiting, nausea, and severe upper abdominal pain. He could not eat without vomiting.

20. Between March 31 and April 4 McAfee made several written requests to corrections officers for further medical attention and treatment.

21. On April 6 McAfee was sent to the medical unit. He was seen by a nurse. The nurse noted that lab results from samples taken on March 30 were charted and seeking review by a medical doctor, and that McAfee's white blood counts were elevated. New blood samples were drawn and sent to the lab. McAfee was not seen by a physician but an on-call medical doctor was notified by telephone and prescribed Zantac for "indigestion." McAfee was added to sick call for April 8 and then sent back to his cell.

22.     On April 7 McAfee again made a written request to corrections officers for immediate medical attention for the same symptoms he had been exhibiting since March 29—vomiting, nausea and severe upper abdominal pain.

23.     On April 8 McAfee was sent to the medical unit and was examined by Dr. Naqvi.  He informed Dr. Naqvi that he still was experiencing vomiting, nausea and severe upper abdominal pain, and that these symptoms went unabated since first appearing on March 29.

24.     Dr. Naqvi concluded that McAfee exhibited a positive "Murphy sign" during his physical examination.   After examining McAfee and reviewing his medical records, Dr. Naqvi concluded that McAfee was suffering from "acute cholecystitis." Cholecystitis is an inflammation of the gallbladder that causes severe abdominal pain. Dr. Naqvi prescribed Cipro (a bacterial antibiotic) for 10 days and Motrin (anti-inflammatory and pain medication).  Dr. Naqvi told McAfee that he had "textbook" gallbladder symptoms but nevertheless sent McAfee back to his cell.

25.     That same day, April 8, Dr. Naqvi submitted a document to the Utilization Review Committee for additional medical service.  The document stated, in pertinent part,

> [P]atient still has significant pain in right upper quadrant with sub costal tenderness. X-ray did not show any gall stone but leucocytosis with high neutrophil count and raised ALT level point out toward acute process in area. [P]atient has been started on antibiotics[.]  [A]n ultra sound and general surgery consult are in order.

"Leucocytosis with high neutrophil count" is a high white blood cell count that signals acute inflammation and massive infection. "Raised ATL levels" are an indication of liver damage or disease.

5

26. On April 8 Dr. Naqvi became aware that McAfee was suffering from acute inflammation of the gallbladder that required emergency medical treatment.

27. April 8, 2012 was Easter Sunday.

28. On or about April 9 McAfee made a request for emergency medical treatment because he was still vomiting and experiencing severe abdominal pain.

29. On April 10 McAfee was granted permission to go to the medical unit. He arrived at 12:50 am. While there, he informed the on-duty nurse that he was experiencing excruciating pain in the right upper quadrant of his abdomen and still vomiting. He described the pain as a 10 on a scale of 1-10.

30. The on-duty nurse then consulted with a physician, Carson Wright, M.D., by telephone because there was no physician at the facility at that time. The on-duty nurse then gave McAfee an injection of Toradol for pain management. The nurse told McAfee that he would be placed on sick call and seen by a physician in the morning. McAfee was then sent back to his cell.

31. Also on April 10 the Utilization Review Committee approved the Dr. Naqvi's April 8 request for an ultrasound and general surgery consult.

32. McAfee was not placed on sick call that morning as stated by the on-duty nurse the midnight before. Nor was he placed on sick call the next day.

33. On April 12 McAfee was called to the medical unit for follow-up of the April 10 midnight emergency. At the time of this visit (12:00 pm) he was not in severe pain because of the tranquilizing effect of the Toradol injection he had received 36 hours before.

34.     While waiting for his turn to be examined, McAfee sat in a chair. The on-duty nurse at the time, Nurse Rob, approached him and asked, "Who is the emergency?" McAfee responded, "It's me." McAfee then followed Nurse Rob it the exam room. After McAfee explained that he was not in pain at that very moment, Nurse Rob responded, "Then you're not a f—king emergency." Stunned at Nurse Rob's inappropriate outburst, McAfee asked, "Why are you being such a cocky assh-le to me?" Nurse Rob then told McAfee to get out of the exam room and that he would be put in segregation instead of his cell. McAfee then went back into the waiting room and sat down. Nurse Rob's actions prevented McAfee from seeing a physician.

35.     A short time later a corrections lieutenant arrived and told McAfee to go back to his cell in the general population. McAfee immediately went back to his cell. He was not examined by a physician or any other medical personnel on April 12.

36.     On April 17 a nurse presented McAfee with a copy of the Utilization Review Committee approval dated April 10 and asked him to sign it, which he did. The nurse told McAfee that he was approved for an ultrasound of the abdomen and that he was going to be transferred to UCONN Health Center ("UCHC") in Farmington later that day. He was not examined by a physician or any other medical personnel that day nor was he transferred to UCHC.

37.     McAfee remained at MacDougall-Walker in the general population until April 30. Between April 17 and May 1 McAfee continued to experience extreme pain in his upper abdomen which expanded to his chest and lower back. He also continued to experience vomiting and nausea. During this time he also had difficulty breathing.

7

38. Although he continued to experience severe pain in the upper abdomen, vomiting, nausea, and other symptoms, McAfee did not request medical treatment during the period April 12 through April 29 out of fear that he would be placed in segregation as threatened by Nurse Rob if he made such requests.

39. On April 28 and 30 McAfee made written requests for medical treatment for the severe pain in the upper abdomen, vomiting, nausea, and other symptoms he had been experiencing since March 29. McAfee received no response to these requests.

40. During the period April 17 through April 30 McAfee had no communication with medical personnel.

41. During the period March 29 through April 30 McAfee lost 40 lbs because of diminished appetite, nausea, and vomiting.

42. During the period March 29 through April 30 McAfee suffered severe emotional distress due to the severe pain he was experiencing coupled with the lack of adequate medical care he received from Defendants.

43. On May 1 at approximately 3:30 am McAfee was awakened in his cell and told he was being transported to UCONN Health Center ("UCHC") in Farmington. He arrived at UCHC on the morning of May 1.

44. At approximately 1:40 pm McAfee was seen by UCHC clinic personnel at which time his medical history was taken and a physical examination was conducted along with an ultrasound of his upper abdomen. During the physical examination McAfee was found to have a Murphy sign. The Murphy sign combined with the ultrasound indicated acute cholecystitis. McAfee was then admitted to the hospital for IV

antibiotics and placed on the add-on list for next-day cholecsytectomy (surgical removal of the gallbladder).

45.     McAfee was taken to surgery on the afternoon of May 2.  The surgeon, David W. McFadden, M.D., attempted to remove the gallbladder with the usual and customary laparoscopic surgery.  However, after 1.5 hours Dr. McFadden determined that McAfee's gallbladder and so thickened, inflamed, and gangrenous that the surgical team "thought it would be best to proceed with conversion to open surgery to avoid any dreadful complications."  The open surgery, during which McAfee's gallbladder was removed, required a 12-inch incision in the abdomen and required 22 staples to close the incision.  Thereafter, a drain tube was placed at the bottom of the incision.

46.     Between May 2 and May 7 McAfee remained at UCMC to recover from the aforementioned gallbladder surgery.  During this time he had severe pain in the abdominal area requiring epidural injections. The drain tube was removed before he was transferred back to the infirmary at the MacDougall-Walker on May 7.

47.     Between May 7 and May 15 McAfee convalesced at the infirmary. Thereafter, he was discharged back to his cell in the general population.

48.     Between May 16 and May 22 the medical staff at the infirmary, including the defendant, Omprakash Pillai, M.D, allowed the staples placed in McAfee during the surgery on May 1 to become embedded and infected before removing them.

49.     On or about July 1, 2012, McAfee was transferred from MacDougall-Walker to  Willard-Cybulski Correctional Institution in Enfield, Connecticut.

50. McAfee was released from prison in or about September 15, 2012. He was given a state medical insurance card before he was released from said incarceration for the purpose of obtaining medical treatment from private sector doctors.

51. McAfee's incarceration was less than the minimum mandatory sentence required by the laws of the State of Connecticut.

52. McAfee continues to experience problems with his abdomen and he sought medical attention at Yale New Haven Hospital in New Haven, Connecticut. On May 8, 2013 he underwent surgery to repair an incisional hernia that developed as a direct result of the aforementioned May 2, 2012 surgical removal of his gallbladder.

53. McAfee was in the custody and control of the State of Connecticut Department of Corrections at all times during the period March 29, 2012 through his release in or about September 15, 2012.

54. The symptoms McAfee displayed between March 29, 2012 and May 2, 2012—severe upper abdominal pain, nausea, vomiting, diminished appetite, distended abdomen, Murphy sign, and high white blood cell count—demonstrated a serious medical need.

55. Defendant Dr. Naqvi diagnosed McAfee as suffering from acute cholecystitis on April 8, 2012 and, at that time, knew that McAfee had a serious medical need.

56. On or about April 8, 2012 Defendant Dr. Naqvi was aware of a substantial risk that McAfee would suffer serious harm if McAfee did not receive adequate medical treatment in a timely manner.

57. On or about April 8, 2012, Defendant Dr. Naqvi informed Defendant Dr. Pillai that McAfee was suffering from acute cholecystitis.

58. On or about April 8, 2012 Defendant Dr. Pillai knew that McAfee had a serious and immediate medical need.

59. On or about April 8, 2012 Defendant Dr. Pillai was aware of a substantial risk that McAfee would suffer serious harm if McAfee did not receive adequate medical treatment in a timely manner.

60. On or about April 10, 2012, Defendants Naqvi and Pillai knew that the Utilization Review Committee had approved an ultrasound and general surgery consult for McAfee.

61. There was a twenty-one (21) day period between the Utilization Review Committee's approval of the ultrasound and general surgery consult and the performance of the ultrasound and general surgery consult.

62. On or about April 10, 2012 Defendants Naqvi and Pillai were aware that a delay in the performance of an ultrasound and general surgery consult posed a substantial risk of serious harm to McAfee.

63. By delaying the performance of the ultrasound and general surgery consult for twenty-one (21) days, Defendants Naqvi and Pillai demonstrated deliberate indifference to McAfee's serious medical need.

64. As a result of the failure of Defendants Navqi and Pillai to provide timely and adequate treatment for McAfee's serious medical need, McAfee suffered severe pain, severe discomfort, and severe emotional distress.

65. After discharge McAfee needed, and will continue to need, medical treatment for the damage to his abdominal are caused by the delay in receiving timely medical treatment as recited herein.

66. As the result of the conduct of Defendants Navqi and Pillai, McAfee will continue to incur medical costs and expenses related to the delay in receiving adequate medical treatment.

67. The actions of Nurse Rob on April 12, 2012 refusing to provide medical treatment and threatening segregation were wanton, reckless, and/or malicious, or done with evil motive.

68. Each Defendant either (1) participated directly in denying adequate and timely medical treatment to McAfee; or (2) after being informed of the denial through actual or constructive notice, failed to provide proper and timely medical care to McAfee; or (3) was grossly negligent in supervising subordinates who denied proper and timely medical treatment to McAfee; or (4) exhibited deliberate indifference to McAfee's rights by failing to act on information indicating proper and timely medical treatment was urgent and necessary.

69. Each Defendant's action or inaction as set forth herein was in reckless disregard to McAfee's medical needs.

70. Each Defendant knew or should have known that severe emotional distress was the likely result of failure to provide McAfee with proper and timely medical treatment for a serious medical need.

71. Each Defendant's conduct in failing to provide McAfee with proper and timely medical treatment caused McAfee severe emotional distress.

## V.   ALLEGATIONS OF LAW

72. All acts of each Defendant as alleged herein were conducted under color and pretense of the laws, statutes, regulations, policies, customs, practices, or usages of the State of Connecticut.

73. Deliberate indifference to the serious medical needs of an inmate violates the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments to the United States Constitution.

74. Each Defendant's failure to provide McAfee with proper and timely medical treatment violated his right to be free from cruel and unusual punishments as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

75. At all times relevant hereto, the constitutional right to receive adequate medical treatment while incarcerated was a clearly established right of which a reasonable person would have known.

76. McAfee's physical symptoms, his repeated declarations of severe abdominal pain, nausea, and vomiting, his repeated pleas for medical treatment, the diagnosis of acute cholecystitis, the surgical removal or his gangrenous gallbladder, and the resulting scarring were sufficiently serious to invoke constitutional protection under the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments to the United States Constitution.

77. Each Defendant's failure to provide proper and timely medical treatment despite McAfee's repeated pleas and physical symptoms demonstrated deliberate indifference to McAfee's serious medical needs.

78. Each Defendant's failure to provide proper and timely medical treatment despite McAfee's repeated pleas and physical symptoms constituted knowledge and deliberate indifference McAfee's serious medical needs.

79. Each Defendant's failure to provide proper and timely medical treatment despite McAfee's repeated pleas and physical symptoms constituted reckless disregard for the substantial risk posed by McAfee's serious medical condition.

80. Each Defendant's failure to provide proper and timely medical treatment to McAfee demonstrated a culpable state of mind that was indifferent to unnecessary and wanton infliction of pain.

81. Each Defendant's failure to provide proper and timely medical treatment to McAfee demonstrated intent to either deny or unreasonably delay access to needed medical care.

82. Each Defendant's failure to provide proper and timely medical treatment to McAfee as he exhibited symptoms of acute cholecystitis and pleaded for adequate medical treatment was a barbarous act that shocks the conscience.

83. Each Defendant's conduct as recited herein was wanton, reckless, and/or malicious, or done with evil motive.

84. Each Defendant's conduct was highly unreasonable and involved an extreme departure from ordinary care in a situation where a high degree of danger was apparent.

### VI.   CAUSE OF ACTION – 42 U.S.C. § 1983
**(Deliberate Indifference to Serious Medical Need)**

85. Paragraphs 1 through 85 are incorporated herein by reference as though pleaded in full.

86. The acts of each Defendant as alleged herein constituted deliberate indifference to McAfee's serious medical needs in violation of the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments to the United States Constitution.

87. As a direct and proximate cause of each Defendant's actions, McAfee was injured.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

    a. Assume jurisdiction over this action;

    b. Award Plaintiff actual damages against each Defendant for the violation of his civil and constitutional rights and the harm resulting therefrom;

    c. Award Plaintiff punitive damages against each Defendant for the violation of his civil and constitutional rights and the harm resulting therefrom;

    d. Award Plaintiff his costs of litigation, including reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988;

    e. Grant such other and further relief as the Court deems necessary and proper.

## XII.   JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully requests trial by jury on all issues so triable.

Dated : November 4, 2015

                                                     The Plaintiff,

                              by       _____/s/_____
                                          Richard Franchi
                                          900 Chapel Street, Suite 620
                                          New Haven, CT 06510
                                          Ph. (203)  495-1000
                                          Federal Juris No.:04769

## **CERTIFICATION OF SERVICE**

   I hereby certify that on November 4, 2015 a copy of the foregoing was mailed by US mail, first class, postage prepaid to:

Asst Attorney General Neil Parille
Office of the Attorney General
110 Sherman Street
Hartford, CT 06105

                                                The Plaintiff,
                                   by_____/s/_____
                                                Richard Franchi
                                                900 Chapel Street, Suite 620
                                                New Haven, CT 06510
                                                Ph. (203) 495-1000
                                                Federal Juris No.:04769