UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERARD MCAFEE,                              : | |
|     Plaintiff,                                      : | |
|                                                            : | |
| v.                                                     : | 3:14-cv-410 (VAB) |
|                                                            : | |
| SYED J. NAQVI, M.D., individually,      : | |
| OMPRAKASH PILLAI, M.D., individually, and  : | |
| ROBERT BONNETTI, individually,         : | |
|     Defendants.                                 : | |

## RULING ON MOTION IN LIMINE

Gerard McAfee ("Plaintiff") brings this case against Syed J. Naqvi, M.D., Omprakash Pillai, M.D., and Robert Bonnetti (collectively, "Defendants"), all employees of the Connecticut Department of Correction, in connection with medical treatment he received while incarcerated at the MacDougall-Walker Correctional Institution in Sheffield, Connecticut. He alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution, by impeding his access to a surgical consultation and other follow up treatment for his infected gallbladder. *See* First. Am. Compl., ECF No. 27 ("Compl.").

Defendants seek to prohibit any evidence concerning "(1) whether the alleged delay in taking the plaintiff to the surgical consultation resulted in injury to the plaintiff other than pain and suffering until the time of the surgery; and (2) whether the alleged delay in taking the plaintiff to see the surgical clinic caused subsequent or permanent injuries." *See* Motion, ECF No. 56. For the reasons that follow, the motion *in limine* is GRANTED to the extent that any treating physician of Mr. McAfee seeks to testify about any matters beyond the scope of their treatment of him.

**I.      Factual and Procedural Background**

On October 21, 2011, a Connecticut court sentenced Mr. McAfee to five years' imprisonment, execution suspended after two years, for carrying a pistol without a permit in violation of Connecticut's General Statutes. On March 19, 2012, while he was serving this sentence, Mr.

McAfee allegedly became seriously ill. After "vomiting … large amounts of liquid" and experiencing "excruciating upper abdominal pain," Mr. McAfee notified the correctional officers on duty. Compl. at ¶ 14. Eventually, the officers brought Mr. McAfee to the prison medical unit. *Id.* at ¶ 15. The next morning, medical personnel at the prison medical unit evaluated Mr. McAfee and conducted several medical tests and x-rays. *Id.* at ¶ 16. Later that morning, Dr. Pillai evaluated Mr. McAfee. *Id.* at ¶ 17. While lab results were pending, Dr. Pillai reviewed the x-rays and ordered a follow-up. *Id.*

For the next week, Mr. McAfee alleges that he suffered severe pain and "could not eat without vomiting." *Id.* at ¶ 19. He "made several written requests to corrections officers for further medical attention and treatment." *Id.* at ¶ 20. On April 6, a nurse at the medical unit evaluated Mr. McAfee, took new blood samples, and gave Mr. McAfee a prescription for Zantac. *Id.* at ¶ 21. The next day, Mr. McAfee made another written request to correctional officers for "immediate medical attention," referencing the same acute abdominal pain and vomiting that he had described in his previous requests. *Id.* at ¶ 22.

Dr. Naqvi evaluated Mr. McAfee the next day. Compl. at ¶ 22. He concluded that Mr. McAfee's gall bladder was inflamed, prescribed a bacterial antibiotic and anti-inflammatory medication, and submitted a document to the Utilization Review Committee recommending that Mr. McAfee receive an ultrasound and general surgery consult. *Id.* at ¶ 25. The Utilization Review Committee approved the request on April 10. *Id.* at ¶ 31. On April 12, prison officials called Mr. McAfee to the medical unit. *Id.* at ¶ 33. McAfee alleges that Mr. Bonnetti ("Nurse Rob") was on duty at the time. When Mr. McAfee entered the unit, Mr. Bonnetti allegedly responded in a hostile manner. Specifically, Mr. Bonnetti

> approached him and asked, "Who is the emergency?" McAfee responded, "It's me." McAfee then followed Nurse Rob it the exam room. After McAfee explained that he was not in pain at that very moment, Nurse Rob responded, "Then you're not a f—king emergency." Stunned at Nurse Rob's inappropriate outburst, McAfee asked, "Why are you being such a cocky assh-le to me?" Nurse Rob then told McAfee to get out of the

exam room and that he would be put in segregation instead of his cell. McAfee then went back into the waiting room and sat down.

*Id.* at ¶ 34.

Mr. McAfee alleges that he continued to experience severe pain and vomiting after his interaction with Mr. Bonnetti, but "did not request medical treatment …out of fear that he would be placed in segregation as threatened by Nurse Rob if he made such requests." *Id.* at ¶ 38. On April 28 and 30, he made written requests for medical care once again. *Id.* at ¶ 39. On May 1, prison officials took him to UCONN Health Center ("UCHC") in Farmington, Connecticut for his ultrasound and consultation. *Id.* at ¶ 40.

At the Health Center, a doctor evaluated Mr. McAfee, concluded that he had "acute cholecystitis" and scheduled gall bladder surgery the next day. Compl. at ¶ 44. The next day, Dr. David W. McFadden performed the surgery, allegedly finding that Mr. McAfee's gall bladder was "thickened, inflamed, and gangrenous." *Id.* at ¶ 45.

After the surgery, officials discharged Mr. McAfee to the general population at MacDougall-Walker. *Id.* at ¶ 47. Mr. McAfee alleges that when he was there, Dr. Pillai "allowed the staples placed in McAfee during the surgery on May 1 to become embedded and infected before removing them." *Id.* at ¶ 48. He alleges that he suffered from additional medical complications after the surgery and had to receive an additional surgery to remove a hernia near the site of his original surgery. *Id.* at ¶ 52.

Mr. McAfee alleges that Defendants were deliberately indifferent to his serious medical needs. Dr. Naqvi, he alleges, diagnosed McAfee as suffering from acute cholecystitis on April 8, 2012 and, at that time, knew that McAfee had a serious medical need. Compl. at ¶ 55. Mr. McAfee also alleges that Dr. Pillai was aware of the acute harm on the same day. *Id.* at ¶ 57.

Mr. McAfee therefore seeks to hold Drs. Naqvi and Pillai responsible for the twenty-one day delay between Utilization Review Committee's approval of the ultrasound and general surgery

consult and Mr. McAfee's actual ultrasound and surgery. He argues that this delay caused damages including physical pain, emotional distress, and "severe discomfort." *Id.* at ¶ 64. He seeks to hold Mr. Bonnetti responsible for the delay as well, because Mr. Bonnetti's taunting deterred him from seeking medical care.

In his pre-trial memorandum, Mr. McAfee listed several doctors as witnesses. The first, Dr. James Passarelli, would testify "as to the treatment that he had to provide to [Mr. McAfee] after he was released from incarceration … in order to attempt to correct the problems that he had that were caused by the deprivation of medical attention by the defendants." Joint Trial Mem., ECF No. 48, 16. The second, Dr. Michael Wong, would testify about the same thing. *Id.* (adding that Dr. Wong would testify about "problems that were caused by the deprivation of medical attention by the defendants, including but not limited to internal bleeding."). Two additional physician witnesses, Dr. McFadden and his assistant, Dr. Jessica Lee, would testify about Mr. McAfee's May 2012 surgery. *Id.* Finally, Dr. Geoffrey Nadzam will "testify as to his treatment of Gerard McAfee for injuries that were caused by the deprivation of medical attention by the defendants including performing two surgeries after Gerard McAfee was released from the department of corrections." Id. at 18.

Defendants move *in limine* for an Order that "no evidence be presented concerning: (1) whether the alleged delay in taking the plaintiff to the surgical consultation resulted in injury to [Mr. McAfee] other than pain and suffering until the time of the surgery; and (2) whether the alleged delay in taking [Mr. McAfee] to see the surgical clinic caused subsequent or permanent injuries." *See* Motion, 2. Defendants also argue that Mr. McAfee's proposed witnesses cannot testify as experts about the medical effect of the alleged delay in his treatment. Mr. McAfee responds that he disclosed the Doctors as experts by listing them in his May 5, 2015 response to interrogatories. *Id.* at 2; *see also* Response to Interrog., Ex. A, ECF No. 62-1 ("Response").

Mr. McAfee listed Dr. McFadden, Dr. Geoffery Nadzam, and Dr. Passarelli under response to Interrogatory 33, which asks for "all experts whom you intend to call as an expert witness at trial." Response, p. 11. Mr. McAfee specifically stated that the three doctors:

> will testify as to the injuries that the plaintiff sustained to his abdomen and organs when he was denied reasonable medical attention on the date listed in the complaint specifically the injuries … that led to multiple surgeries. [The Doctors] treated and examined the plaintiff for the injuries that the plaintiff sustained to his abdomen and organs when he was denied reasonable medical attention. [T]hey all performed surgeries on the plaintiff to repair the effects of the denial of medical treatment. They will state that they are board certified in their specialties and that they have knowledge of the cost of medical treatment that they performed as well as generally accepted costs for treatment associated with the case and treatment with the care and treatment that he was provided and that may be needed in the future. They will state that he sustained permanent disabilities as a result of the denial of medical attention and the location of the permanency.

*Id.*

## II. Standard of Review

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-1955 VLB, 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). Courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

## III. Discussion

### A. Disclosure of Experts

Defendants seek to preclude the introduction of Mr. McAfee's treating physicians because they were not disclosed as experts. Mr. McAfee responds that he disclosed the physicians as experts in his response to Defendants' interrogatories and that, because they are treating physicians not hired for the purpose of providing expert testimony, he was not required to provide expert reports for these physicians under Rule 23(a)(2). The Court agrees with Defendants. Mr. McAfee's response to Interrogatory 33 does not satisfy Rule 23(a)(2), even when considering the lower requirements that the Rule places on treating physicians acting as experts. Accordingly, Mr. McAfee's treating physicians may not offer testimony as expert witnesses, and their testimony at trial must be limited to facts or opinions they acquired while treating Mr. McAfee.

Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose to the other parties the identity of any expert witness it may use at trial, including a treating physician who will present an expert opinion. *See* Fed. R. Civ. P. 26(a)(2)(A). A party seeking to use a treating physician as an expert does not, however, need to provide a written expert report under Rule 26(a)(2)(B) because treating physicians are not "retained or specially employed to provide expert testimony in the case." *See* Fed. R. Civ. P. 26(a)(2)(B); *see also Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn. 2013) (collecting cases).

Nevertheless, even if a party discloses an expert who does not need to provide an expert report under Rule 26(a)(2)(B), compliance with Rule 24(a)(2)(C) is still required and there must be disclosure of "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-CV-0445 PKC, 2013 WL 4046263, at *3 (E.D.N.Y. Aug. 8, 2013) ("Rule 26(a)(2)(C) applies to expert witnesses not covered by Rule 26(a)(2)(B)"); *see also* 2010 Advisory Comm. Notes ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other

health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C).").

A treating physician who has not complied with the reporting requirement of Rule 26(a)(2) should therefore "not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records." *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn. 2013) (citing *Lamere*, 223 F.R.D. at 89). "[I]f a treating physician is called upon to review ... [any] materials outside the four corners of her medical records and to opine greater than what is reflected in those medical records, we then would be of the view that such treating physician now falls with[in] the parameters" of Rule 26(a)(2)(B) and a written expert report would be required. *Lamere*, 223 F.R.D. at n. 4. "[T]he treating physician may not introduce information provided by other physicians to whom the Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor." *Barack*, 293 F.R.D. at 109 (internal citations omitted); *Williams v. Regus Mgmt. Grp.*, LLC, 10–CV–8987(JMF), 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012) (observing that the physician's testimony is limited "to opinions formed during [his treatment of plaintiff], including causation, severity, disability, permanency and future impairments"); *Puglisi*, 2013 WL 4046263, at *6 (physician whose testimony had not been disclosed as required under 26(a)(2)(C) "may not testify as to facts acquired or opinions formed outside of the treating physician role, including but not limited to information acquired during preparations for his testimony at trial."); *Franz v. New England Disposal Technologies, Inc.*, 2011 WL 5443856, at *3 (W.D.N.Y. Nov. 9, 2011) (treating physician who was not designated as an expert witness and failed to prepare the necessary expert report is prohibited from testifying "concerning opinions not gleaned from his own diagnoses and treatment of the plaintiff." ).

Conversely, if the proffering party provides a sufficient disclosure under Rule 26(a)(2)(C), then there is no need "to limit the scope of the treating physician's expert opinion to plaintiff's treatment, by excluding therefrom matters beyond plaintiff's course of treatment, i.e., information acquired from outside sources." *Pitterman v. Gen. Motors LLC*, No. 3:14-CV-00967 (JCH), 2016 WL 2892537, at *2 (D. Conn. May 17, 2016) (citing *Geary v. Fancy*, 12-CV-796W(F), 2016 WL 1252768, at * 3 (W.D.N.Y. Mar. 31, 2016) (internal quotation marks omitted)).

The question, then, is whether Mr. McAfee's response to Interrogatory 33 constitutes sufficient disclosure under Rule 26(a)(2)(C). The Advisory Committee has explained that disclosure under Rule 26(a)(2)(C) is "considerably less extensive than the report required by Rule 26(a)(2)(B)," and cautions that "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Advisory Committee Notes, 2010. Courts have considered disclosures in responses to interrogatories to satisfy Rule 26(a)(2)(C), provided they contain the requisite summary. *See, e.g. Phillips v. UAW Int'l*, No. 15-10525, 2015 WL 6156968, at *1 (E.D. Mich. Oct. 19, 2015) ("If the plaintiff's expert witnesses would not be required to furnish a report under Rule 26(a)(2)(B), the plaintiff may have satisfied Rule 26(a)(2)(C) by making other disclosures throughout the discovery period allowed in this case, through, for example, answers to interrogatories to document productions"); *Roark v. Speedway, LLC*, No. CV 13-139-ART, 2015 WL 12978822, at *3 (E.D. Ky. Apr. 6, 2015) ("Roark identified Dr. Brackett as an expert witness in his response to state court interrogatories. R. 1-2 at 7. But Roark never provided the required Rule 26(a)(2)(C) summary. Thus, Dr. Brackett cannot testify as an expert unless Roark's failure to comply with Rule 26 is 'substantially justified or is harmless.'").

Nevertheless, the Court must make some demands of treating physicians who intend to act as experts. In the past, for example, courts in this Circuit have rejected disclosures that constitute "mere list[s] of names, accompanied by three-word descriptions of the subject matter of their testimony."

8

*Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.) Thayer Rd., S.B.L. No. 63.00-1-24.1, Town of Erin, Cty. of Chemung, N.Y.*, 919 F. Supp. 2d 297, 300 (W.D.N.Y. 2013), *aff'd sub nom. Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.) Thayer Rd., S.B.L. No. 63.00-1-24.1, Town of Erin, Cty. of Chemung,* New York, 552 F. App'x 37 (2d Cir. 2014). Courts have also concluded that expert physicians were improperly disclosed under Rule 26(a)(2)(C) when the disclosures did not specify that the doctors would serve as expert, rather than fact, witnesses. *Ziegenfus v. John Veriha Trucking*, 10–CV–5946(RJS), 2012 WL 1075841 at *6-*7 (S.D.N.Y. Mar. 28, 2013) (physician could not testify as expert when proffering party had only submitted an opinion letter from the physician, without indicating that it was a summary of his expert testimony, and had stated that the physician might testify, in an interrogatory response, but did not identify the physician as an expert witness); *Puglisi*, 2013 WL 4046263, at *4 ("Defendants could not reasonably have been expected to infer from Puglisi's Initial Disclosures, which identified Dr. Stein as Puglisi's treating physician and merely listed [Stein's letters to an agency] as possible evidence, that Puglisi intended to call Dr. Stein as an expert witness or that the Stein letters were intended to serve either as Dr. Stein's expert report."). Ultimately, the question is whether the disclosure provides "sufficient detail to permit defendants to prepare their defense." *Anderson v. E. CT Health Network, Inc.*, No. 3:12CV785 (RNC), 2013 WL 5308269, at *1 (D. Conn. Sept. 20, 2013).

 Mr. McAfee therefore can introduce treating physicians as expert witnesses if his interrogatory responses satisfy the requirements of Rule 26(a)(2)(C). Otherwise, Drs. Passarelli, Wong, McFadden, and Lee must limit their testimony to opinions formed during their treatment of Mr. McAfee, "including causation, severity, disability, permanency and future impairments." *Williams*, 2012 WL 1711378, at *3, but excluding "opinions not gleaned from his own diagnoses and treatment of the plaintiff." *Franz*, 2011 WL 5443856, at *3. As an initial matter, Mr. McAfee only

disclosed Drs. McFadden and Passarelli in his responses to interrogatories, so his disclosure of Drs. Wong and Lee did not comply with Rule 26(a)(2)(C) at all.

As for Drs. Passarelli and McFadden, Mr. McAfee's response to Interrogatory 33 states that these doctors

> will testify as to the injuries that the plaintiff sustained to his abdomen and organs when he was denied reasonable medical attention on the date listed in the complaint specifically the injuries … that led to multiple surgeries. [The Doctors] treated and examined the plaintiff for the injuries that the plaintiff sustained to his abdomen and organs when he was denied reasonable medical attention. [T]hey all performed surgeries on the plaintiff to repair the effects of the denial of medical treatment. They will state that they are board certified in their specialties and that they have knowledge of the cost of medical treatment that they performed as well as generally accepted costs for treatment associated with the case and treatment with the care and treatment that he was provided and that may be needed in the future. They will state that he sustained permanent disabilities as a result of the denial of medical attention and the location of the permanency.

Response, p. 11.

Defendants seek an order precluding the proposed experts from testifying as to "(1) whether the alleged delay in taking the plaintiff to the surgical consultation resulted in injury to the plaintiff other than pain and suffering until the time of the surgery; and (2) whether the alleged delay in taking the plaintiff to see the surgical clinic caused subsequent or permanent injuries." Motion, 2.

Defendants' request should be granted, to the extent that it seeks to preclude any testimony by McAfee's treating physicians that goes beyond their actual treatment of him. While the interrogatory response arguably provides disclosure on "the subject matter on which the witness is expected to testify," as required by Rule 26(a)(2)(C), the disclosure fails to contain "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Indeed, even on the eve of trial, there is nothing in the interrogatory response or elsewhere in the record that would help the Defendants, much less the Court, understand what any of these treating physicians will offer specifically on the subject matter for which they were disclosed, in terms of facts and medical opinions.

Instead of facts and opinions, the interrogatory response offers mere generalities, such as the fact that Mr. McAfee "was denied medical attention" and sustained "permanent disabilities as a result," and the "generally accepted costs for treatment associated with the case and treatment with the care and treatment that he was provided and that may be needed in the future." Response, 11. As a result, there is not "sufficient detail to permit defendants to prepare their defense." *Anderson*, 2013 WL 5308269.

As this Court stated in *Barack*, "[a] treating physician who was not designated as an expert witness and failed to prepare the necessary expert report is prohibited from testifying 'concerning opinions not gleaned from his own diagnoses and treatment of the plaintiff.'" *Barack*, 293 F.R.D. at 109 (internal citation omitted). Accordingly, the testimony of Drs. Passarelli and McFadden will be "permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician limited to the facts in Plaintiff's course of treatment." *Id.* (citations and quotation marks omitted) (emphasis in original).

### B. Impact of Lack of Expert Testimony

Defendants also argue that expert testimony is crucial to Mr. McAfee's case. "[F]or the plaintiff to demonstrate causation, namely that the allegedly delay in taking him to surgery caused the need for subsequent or additional medical treatment[,] requires expert testimony." Motion, 2. The Court construes this observation to be a request to limit the damages Mr. McAfee can seek without expert testimony, rather than to limit Mr. McAfee's ability to state a claim at all. Given the complex medical issues involved in his theory of causation, medical testimony will be necessary. Mr. McAfee may attempt to prove causation using the testimony of his treating physicians, which will be limited as described above.

### 1. Mr. McAfee's Case in Chief

11

Mr. McAfee raises claims under the Eighth Amendment, which means he must prove that Defendants displayed "deliberate indifference" to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both objective and subjective components. First, the deprivation of care must objectively be "sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). Second, the facts must give rise to a reasonable inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998). "[A] delay in treatment," therefore, "does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau Cnty. Corr. Ctr.,* 288 F.Supp.2d 333, 339 (E.D.N.Y.2003) (quoting *Chance,* 143 F.3d at 703).

Mr. McAfee's claim does not fail because he lacks expert testimony. When a prisoner raises a deliberate indifference claim based on an "unreasonable delay or interruption in … treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). A plaintiff can meet the objective component of the deliberate indifference standard without the assistance of an expert by showing that the defendants were themselves aware that a delay in treatment posed a serious medical problem. *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 181 (N.D.N.Y. 1996) (summary judgment inappropriate when "[a]ll of the doctors who examined the plaintiff determined that surgery was an appropriate measure to alleviate the plaintiff's pain and suffering, the plaintiff was continuously given prescriptive painkillers, and the defendants failed to present any evidence to undermine the plaintiff's claim that his medical condition was serious and caused him considerable pain.").

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,

and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (internal citations omitted). The finder of fact can then assess the defendant's deliberate indifference by making determinations about the defendant's behaviors, testimony, and credibility. *See Estelle*, 429 U.S. at 104–05 (observing that deliberate indifference to the inmate's serious medical needs violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."); *see also Gill v. Mooney*, 824 F.2d 192, (2d Cir.1987) (plaintiff may have valid claim for relief where medical treatment refused for misconduct unrelated to medical condition or treatment); *Archer v. Dutcher*, 733 F.2d 14 (2d Cir.1984) (summary judgment inappropriate where plaintiff raises issue of material fact regarding possibility that defendants delayed emergency medical aid to cause suffering for obstreperous inmate); *Stevens v. Goord*, 535 F.Supp.2d 373, 388–89 (S.D.N.Y.2008) (doctors' unfounded assertion that plaintiff's chest pain and respiratory symptoms were "essentially untreatable," which led to no treatment at all for nine months, raised factual issue as to their deliberate indifference); *see also Hamilton v. Lalumiere*, No. 3:07CV148 JBA, 2011 WL 674023, at *2 (D. Conn. Feb. 16, 2011) (judgment as a matter of law denied to corrections officer whose deliberate indifference was manifested by the fact that, when he knew the plaintiff's treatment would be delayed, he "ma[de] no interim efforts of any sort to relieve Plaintiff's suffering, only making a perfunctory inquiry while observing Plaintiff's continuing symptoms.").

Mr. McAfee alleges that he experienced and reported to Defendants his acute symptoms, including nausea, "excruciating abdominal pain," and repeated vomiting. He alleges that Drs. Naqvi and Pillai failed to promptly respond to his alleged symptoms, and that Mr. Bonnetti's intentional taunting and abuse interfered with his access to medical care. He further alleges that Drs. Naqvi and

Pillai improperly and intentionally failed to attend to his post-surgical needs, so that the staples in his abdomen became infected.

These allegations could sustain a claim of deliberate indifference, even without expert testimony. *See generally Hathaway*, 37 F.3d at 68 ("We have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony. The inquiry remains whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law. Expert testimony certainly could have bolstered Hathaway's case at trial, but the absence of such expert proof does not mandate dismissal of his action where the facts support a finding of deliberate indifference").

At trial, Mr. McAfee could argue that Defendants knew about the delay in scheduling his surgery, understood "the likely medical consequences of such a delay," and deliberately failed to address the potential problem. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). Mr. McAfee may also show, using Defendants' testimony, that they were "willful[ly] blind" or callous to his condition. *Salahuddin*, 467 F.3d at 282 (cautioning that "[w]hile willful blindness to a risk might suggest awareness of the risk, simple blindness does not, and leads only to a finding of unactionable negligence."). Of course, Defendants may rebut this evidence by "establishing that they were unaware of th[e] risk" to Mr. McAfee or that they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Defendants will not be held to the standards set by tort law for reasonable physicians. "Medical malpractice does not become a constitutional violation just because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

### 2. Mr. McAfee's Damages

Defendants' true concern, however, seems to be with Mr. McAfee's ability to prove that Defendants' alleged violations caused the injuries he claims. As Defendants argue, Mr. McAfee must prove that his injuries were proximately caused by Defendants' deliberate indifference. "Civil

actions brought under § 1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation. A § 1983 action, like its state tort analogs, employs the principle of proximate causation." *Barnes v. Anderson*, 202 F.3d 150, 158 (2d Cir. 1999) (citations omitted); *see also Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir.1998) ("[A]s in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). For this reason, Mr. McAfee must show that the alleged delay in treatment caused the medical injuries for which he seeks compensation.

Mr. McAfee alleges only that "[a]s a direct and proximate cause of each Defendant's actions, [he] was injured," Compl. at ¶ 87, but his pre-trial submissions make clear that he intends to hold Defendants liable for medical injuries relating to Defendants' constitutional violations. Specifically, he alleges that Defendants proximately caused not only the pain and suffering he experienced during the alleged delay in scheduling his surgery, but also the complications in his later surgery, his current or future medical problems, and his lifelong disabilities. Joint Trial Mem., 16 (further alleging that, as a result of Defendants' conduct, "McAfee will continue to incur medical costs and expenses related to the delay in receiving adequate medical treatment.").

Mr. McAfee cannot prove these allegations without expert testimony. While demonstrating causation in medical cases does not necessarily require expert testimony, "expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Shegog v. Zabrecky*, 36 Conn. App. 737, 745-46, 654 A.2d 771, *cert. denied*, 232 Conn. 922, 656 A.2d 670 (1995). "Medical evidence relating to causes of injury to the human body is not normally considered to dwell within the common knowledge of a layperson." *Gold v. Dalkon Shield Claimants Tr.*, No. B-82-383 (EBB), 1998 WL 351456, at *3 (D. Conn. June 15, 1998), *aff'd*, 189 F.3d 460 (2d Cir. 1999). Of course, the need for expert testimony depends on the type of causation analysis required; the Connecticut Supreme Court has described an exception to

the requirement of expert testimony where the medical condition is "obvious or common in everyday life" or where "the plaintiff's evidence creates a probability so strong that a jury can form a reasonable belief without the aid of any expert opinion." *Palmer v. Sena*, 474 F. Supp. 2d 347, 350 (D. Conn. 2007) (citing *Aspiazu v. Orgera*, 205 Conn. 623, 631, 535 A.2d 338 (1987)).

Mr. McAfee's allegation of causation—that Defendants' alleged deliberate indifference exacerbated his existing Cholecystitis to cause surgical complications and lasting physical damage—is outside the realm of expertise of a lay member of the jury. The effect that such a delay in treatment would have on an existing infection in the gallbladder is not "obvious or common in everyday life," *Palmer*, 474 F. Supp. 2d at 350, nor does the normal progression of Cholecystitis "dwell within the common knowledge of a layperson." *Gold*, 1998 WL 351456, at *3. Without assistance from a medical expert, the jury will be unable to distinguish the medical effects of the alleged delay from the effects of Mr. McAfee's preexisting injury. *See, e.g. Evans v. Bonner*, 196 F. Supp. 2d 252, 258 (E.D.N.Y. 2002) (granting summary judgment on deliberate indifference claim when plaintiff "acknowledges that he has not identified any expert who will testify that his injury was aggravated as a result of the claimed delay in medical treatment, and admits that no medical records exist which supports that a delay in medical care results in aggravation of his injury."); *R.T. v. Gross*, 298 F.Supp.2d 289, 296 (N.D.N.Y.2003) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in the medical treatment to succeed.") (citing *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Because Defendants' motion *in limine* has been granted to the extent that any of the treating physicians seek to testify beyond their treatment of Mr. McAfee, any medical testimony necessary to sustain Mr. McAfee's claims must come from their experience as treating physicians. Without hearing the testimony these treating physicians have to offer, at this stage of the proceedings, the

Court cannot assess whether this testimony, as limited, will be sufficient in order for Mr. McAfee to argue that the alleged constitutional violations caused his future physical injuries.  As a result, this Court must await trial to determine what the jury may properly draw from this evidence.  *See Nat'l Union*., 937 F. Supp. at 287 (denial of motion *in limine* appropriate so that the court could "reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context."); *see also Luce*, 469 U.S. at 41 (observing that a ruling *in limine* "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer.").

## IV.  Conclusion

Defendants' Motion *in limine* is GRANTED, to the extent that Mr. McAfee's treating physicians seek to testify about matters beyond their treatment of him.

SO ORDERED this 26th day of July, 2017 in Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE